PD-0576-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/12/2015 10:32:17 AM
Accepted 5/12/2015 4:09:49 PM
ABEL ACOSTA
CLERK

PD-0576-15

NO. _____

In The
Court of Criminal Appeals
Of The State of Texas
Austin, Texas

---

**STANLEY WAYNE ROBERTSON,**
Petitioner

vs.

THE STATE OF TEXAS,

---

**PETITION
FOR
DISCRETIONARY REVIEW**

---

Petition in Cause No. 10-04337-CRF-85
from the 85th District Court of Brazos County, Texas,
And Cause No. 10-13-00105-CR
Court of Appeals for the Tenth District of Texas

---

FILED IN
COURT OF CRIMINAL APPEALS

May 12, 2015

ABEL ACOSTA, CLERK

GERALD E. BOURQUE
Appointed Counsel for Petitioner
Attorney at Law
24 Waterway Ave., Suite 660
The Woodlands, TX 77380
PHONE: (281) 379-6901
Fax: (832) 813-0321
TBL #02716500

May 12, 2015

## IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

(a.)   Stanley Wayne Robertson, appellant

(b.)   John Edward Wright, P.O. Box 6547, Huntsville, TX, 77342 and Frank Blazek, 1414 11th Street, Huntsville, TX 77340, counsel for appellant at trial

( c.)   Gerald E. Bourque, 24 Waterway Ave., Suite 660, The Woodlands, TX, 77380, counsel for appellant on appeal

(d.)   The State of Texas represented by Jarvis Parsons and Brian Price, Office of the District Attorney, 300 East 26th Street, Suite 310, Bryan, TX, 77803, counsel for the State

(e.)   Hon. J.D. Langley, Judge Presiding


 /s/ Gerald E. Bourque
GERALD E. BOURQUE
Attorney of Record for Appellant

i

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES...............................................................................i

TABLE OF CONTENTS.............................................................................ii

INDEX OF AUTHORITIES.........................................................................iv

STATEMENT REGARDING ORAL ARGUMENT.................................................1

STATEMENT OF THE CASE........................................................................3

STATEMENT OF THE PROCEDURAL HISTORY.................................................3

GROUNDS FOR REVIEW...........................................................................4

ARGUMENTS........................................................................................5

    **GROUND FOR REVIEW NO. ONE:** The Court of Appeals erred in holding the evidence to be legally sufficient to sustain the guilty verdict..............................................................................

    **GROUND FOR REVIEW NO. TWO:** The Court of Appeals erred in affirming the trial court's denial of petitioner's motion for instructed verdict..............................................................................

    **GROUND FOR REVIEW NO. THREE:** The Court of Appeals erred in holding that there was no fatal variance between the *allegata* and the *probata*..........................................................................

    **GROUND FOR REVIEW NO. FOUR:** The Court of Appeals erred in affirming the trial court's overruling of petitioner's objections to the jury charge..............................................................................

    **GROUND FOR REVIEW NO. FIVE:** The Court of Appeals erred in affirming the trial court's admission into evidence multiple autopsy

photographs over petitioner's objection........................................................
ii

PRAYER FOR RELIEF.....................................................................22

CERTIFICATE OF SERVICE.............................................................23

CERTIFICATE OF COMPLIANCE....................................................23

iii

# INDEX OF AUTHORITIES

**Page**

**CASES**

*Bell v. State,* 693 S.W. 2d 434 (Tex. Crim. App. 1985)............................................15

*Burks v. United States,* 437 U.S. 1, 98 S.Ct 2141, 57 L.Ed.2d 1 (1978).................10

*Canales v. State,* 98 S.W. 3d 690 (Tex. Crim. App. 2003).......................................10

*Dewberry v. State,* 4 S.W. 3d 735 (Tex. Crim. App. 1999).........................................5

*Drichas v. State,* 175 S.W. 3d 795 (Tex. Crim. App. 2005).........................................5

*Ferrel v. State,* 55 S.W. 3d 586 (Tex. Crim. App. 2001).....................................14, 15

*Gollihar v. State,* 46 S.W. 3d 243 (Tex. Crim. App. 2001)................................11, 13

*Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978)...................10

*Hall v. State,* 619 S.W. 2d 156 (Tex. Crim. App. 1980)...........................................11

*Herrin v. State,* 125 S.W. 3d 436 (Tex. Crim. App. 2002)................................7, 8, 9

*Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)............5

*Long v. State,* 823 S.W. 2d 259 (Tex. Crim. App. 1991).........................................19

*Malik v. State,* 953 S.W. 2d 234 (Tex. Crim. App. 1997)...........................................5

*Mason v. State,* 905 S.W. 2d 570 (Tex. Crim. App. 1995).........................................8

*Moreno v. State,* 755 S.W. 2d 866 (Tex. Crim. App.  1988).......................................5

*Narvaiz v. State,* 840 S.W. 2d 415 (Tex. Crim. App. 1992).......................................11

*Rose v. State*, 1 Tex. App. 400 (1876)..........................................................................11

*Rousseau v. State*, 855 S.W. 2d 666 (Tex. Crim. App. 1993)...................................14

*Santellan v. State*, 939 S.W. 2d 155 (Tex. Crim. App. 1997)...................................19

*Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 221, 72 L. Ed. 2d 652 (1982)................11

*Torres v. State*, 71 S.W. 3d 758 (Tex. Crim. App. 2002)..........................................18

**STATUTE**

Rule 403, Tex. R. Evid...............................................................................................19, 20

## STATEMENT REGARDING ORAL ARGUMENT

The grounds for review set forth in this petition concern the conflicting opinions of different appellate courts on the same point of law, conflicts with this decision and the U.S. Supreme Court decisions, and the misinterpretation of the factual bases of petitioner's complaints by the Court of Appeals are adequately addressed without the necessity of oral argument.

In The

Court of Criminal Appeals

Of The State of Texas

Austin, Texas

_____

**STANLEY WAYNE ROBERTSON,**
Petitioner

vs.

THE STATE OF TEXAS,

_____

**PETITION
FOR
DISCRETIONARY REVIEW**

_____

COMES NOW, STANLEY WAYNE ROBERTSON, petitioner herein, and petitions this Court to review the judgment affirming his conviction for capital murder in cause no. 10-13-00105-CR, in the Tenth Court of Appeals, trial court no. 10-04337-CRD-85 in the 85th District Court of Brazos County, Texas.

10

## STATEMENT OF THE CASE

Petitioner was convicted of capital murder after a jury trial upon his plea of not guilty. Petitioner was indicted by a Brazos County grand jury for the offense of capital murder. (CR.-2). Trial was to a jury. (R.R. XXXIV-19, *et seq*.). Following the presentation of evidence, and following arguments of counsel and deliberations, the jury found petitioner guilty of the offense of capital murder as charged in the indictment. (R.R. XXXVII-49). After the presentation of punishment evidence, and after further arguments of counsel and deliberations, the jury answered special issue number one in the affirmative, special issue number two in the negative, and special issue number three in the affirmative, resulting in punishment being assessed at imprisonment for life without parole by operation of law. (R.R. L-4-5). This conviction was affirmed by the Court of Appeals, Tenth District, on April 16, 2015. A copy of said opinion is appended hereto as Appendix A.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its opinion affirming the conviction on April 16, 2015. No motion for rehearing was filed and this petition is filed with the clerk of the Court of Appeals within 30 days after the final ruling, to-wit: on May 15, 2015.

# GROUNDS FOR REVIEW

**GROUND FOR REVIEW NO. ONE:** The Court of Appeals erred in holding the evidence to be legally sufficient to sustain the guilty verdict.

**GROUND FOR REVIEW NO. TWO:** The Court of appeals erred in affirming the trial court's denial of petitioner's motion for instructed verdict.

**GROUND FOR REVIEW NO. THREE:** The Court of Appeals erred in holding that there was no fatal variance between the *allegata* and the *probata*.

**GROUND FOR REVIEW NO. FOUR:** The Court of Appeals erred in affirming the trial court's overruling of petitioner's objections to the jury charge.

**GROUND FOR REVIEW NO. FIVE:** The Court of Appeals erred in affirming the trial court's admission into evidence multiple autopsy photographs over petitioner's objection.

## ARGUMENTS

## GROUND FOR REVIEW NOS. ONE and TWO:

Petitioner raised the issue of the insufficiency of the evidence and the trial court's error in failing to grant a motion for instructed verdict of acquittal, however the Court of Appeals erroneously rejected that argument. The Court of Appeals correctly cited the applicable standard to review the legal sufficiency of the evidence under *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). See also *Drichas v. State,* 175 S.W. 3d 795 (Tex. Crim. App. 2005). While appellate courts do not re-evaluate the evidence, nor substitute the court's judgment for that of the fact finder, they do overturn the verdict when it is irrational or unsupported by more than a mere modicum of the evidence. *Dewberry v. State,* 4 S.W. 3d 735 (Tex. Crim. App. 1999); *Moreno v. State,* 755 S.W. 2d 866 (Tex. Crim. App. 1988). Lastly, the legal sufficiency of the evidence is measured by the elements as defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W. 2d 234 (Tex. Crim. App. 1997).

The jury charge in the cause *sub judice* charged as follows:
"Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about August 13, 2010, in Brazos County, Texas, the defendant, STANLEY ROBERTSON did intentionally cause the death of an individual, namely, Annie Toliver, by stabbing or cutting her with a knife, and

the defendant was then and there in the course of committing or attempting to commit the offense of Kidnapping of Annie Toliver, you will find the defendant guilty of the offense of Capital Murder in the indictment.

If you do not so find, or if you have a reasonable doubt thereof, you will find the defendant not guilty of Capital Murder and next consider whether the defendant is guilty of the lesser-included offense of Murder." (R.R. XXXVII-14-16).

Therefore, pursuant to the court's charge, the only manner in which the jury could find petitioner guilty of the offense of capital murder was to find that he caused the complainant's death while in the course of committing or attempting to commit kidnapping. Fatal to the verdict, however, is the absence of any evidence of the complainant's death being caused *in the course* of committing kidnapping or attempted kidnapping. Therefore, no rational trier of fact could have found all the essential elements beyond a reasonable doubt.

The critical question is whether the murder was committed *in the course of the kidnapping or attempted kidnapping*, not the other way around. *Herrin v. State,* 125 S.W. 3d 436 (Tex. Crim. App. 2002). In other words, the critical question is which occurred first, the murder or the kidnapping. If the murder occurred first, then it was not done in the course of committing or attempting to commit kidnapping. *Herrin, supra*. Therefore, if the murder occurred first, the evidence is

insufficient to sustain a conviction for capital murder. *Herrin, supra*.

It is abundantly clear in the case at bar that the complainant accompanied petitioner in his car voluntarily. (R.R.XXXIV-52-53). Nothing in the record shows that the complainant's movement was ever restricted by petitioner, nor without her consent, prior to her being stabbed. The appellate court's observation that petitioner stabbed Toliver through her seatbelt and that could show sufficient restraint to establish kidnapping defies logic. There is no evidence that petitioner caused Toliver to be restrained by the seatbelt; in fact, Texas law requires the use of seatbelts. Viewing the evidence in the light most favorable to the verdict, it was not until <u>after</u> the complainant was stabbed that a kidnapping could arguably have begun.[1] The offense of kidnapping is complete when the person is restrained, and evidence exists establishing the defendant intended to restrain the victim by either secretion or the use or threat to use deadly force. *Mason v. State*, 905 S.W. 2d 570 (Tex. Crim. App. 1995). As regards capital murder as alleged herein, the kidnapping must precede the homicide. There is nothing to show that any alleged kidnapping occurred before the complainant was stabbed. The homicide of the complainant began at the time she was first stabbed. The "kidnapping" did not occur until after the homicide had begun. Therefore, the murder did not occur in the course of committing or attempting to commit kidnapping, the kidnapping or

---

[1]Petitioner does not concede that a kidnapping actually occurred. This is only presented as argument pursuant to the *Jackson* standard.

attempted kidnaping occurred in the course of committing murder.  This is legally insufficient to sustain the conviction for capital murder.

The facts in the cause *sub judice* are astonishingly similar to those in *Herrin, supra*, wherein the Court of Criminal Appeals found the evidence therein to be legally insufficient to sustain a conviction for capital murder.  In *Herrin*, the defendant approached the complainant's truck with a rifle in his hand, opened the door, and shot the complainant in the chest.  The defendant then moved the complainant's body.  In finding the evidence to be legally insufficient, the court stated:

> "Appellant's clear and un-diverted intent was to kill (the complainant).  Nothing suggests that appellant was in the course of attempting a kidnapping when he shot (the complainant).  Appellant did not shoot to merely disable or harm (the complainant) so that he could abduct him, but shot him at close range in the vital organs in an obvious effort to kill him.  In light of appellant's intent to murder (the complainant), appellant's moving of (the complainant's) body after the shooting did not amount to evidence that (the appellant) was in the course of kidnapping when the murder took place." *Herrin, supra*.

The facts are analogous to those in the case at bar. Petitioner did not kidnap the complainant first, and then murder her. She went willingly with him in his vehicle to Wal-Mart. She waited in his car in the parking lot while petitioner and her son went into the store. It was not until after petitioner returned to his vehicle that the homicide began. Blood was found in the parking lot of Wal-Mart where Petitioner's vehicle had been. Therefore, it was *after* the homicide began that the complainant was moved. "Appellant's moving of the body after the shooting in which appellant intended to kill the victim does not amount to a kidnapping *or* attempted kidnapping." *Herrin, supra*. Therefore, Petitioner's moving the complainant after he began to stab her does not amount to a kidnapping or attempted kidnapping herein. The murder began before any alleged kidnapping began. Therefore, petitioner did not murder the complainant during the course of kidnapping nor attempting to kidnap the complainant. As such, the evidence is legally insufficient to sustain the conviction.

At the close of the State's case in chief, petitioner moved for an instructed verdict of not guilty. (R.R. XXXVI-72). The trial court denied petitioner's motion. An appeal of the denial of a motion for an instructed verdict is a challenge to the legal sufficiency of the evidence. *Canales v.*

17

*State*, 98 S.W. 3d 690 (Tex. Crim. App. 2003). Because the state failed to prove beyond a reasonable doubt petitioner caused the death of the complainant in the course of committing kidnapping nor attempted kidnapping as alleged, and because the jury was charged to find petitioner guilty only if they found beyond a reasonable doubt that the homicide was committed during the course of kidnapping or attempted kidnapping, the evidence is legally insufficient to sustain the verdict. As such, the trial court erred in denying petitioner's motion for an instructed verdict. The Court of Appeals erred in its analysis of the evidence in denying relief on these issues. The evidence is insufficient to support the conviction of capital murder warranting an acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). The Court of Appeals was therefore in error by failing to reverse the conviction and enter a judgment of acquittal. For these reasons, petitioner urges that this cause be reversed and that a judgment of acquittal as to capital murder be entered. *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 221, 72 L. Ed. 2d 652 (1982); *Narvaiz v. State*, 840 S.W. 2d 415 (Tex. Crim. App. 1992).

**GROUND FOR REVIEW NO. THREE:**

The Court of Appeals likewise erred in failing to recognize the fatal

variance between the allegations and the proof offered at trial. As pointed out to the Court of Appeals, a variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial.  In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar v. State*, 46 S.W. 3d 243 (Tex. Crim. App. 2001).  This has been true in Texas jurisprudence for well over 100 years.  *Rose v. State*, 1 Tex. App. 400 (1876).  A variance is material and fatal if it misleads a defendant to his prejudice.  *Hall v. State*, 619 S.W. 2d 156 (Tex. Crim. App. 1980). Petitioner was indicted for causing the death of the complainant by "stabbing and cutting her with a knife . . . ." (R.R. XXXIV-18-19).  The jury was charged to find petitioner guilty if they found beyond a reasonable doubt that he, *inter alia*, ". . . caused the death of an individual - - namely Annie Toliver - - while stabbing or cutting her with a knife. . . ." (R.R. XXXVII-14-15).  The evidence adduced by the State, however, wholly fails to show that petitioner caused the death of the complainant in the manner alleged.

The forensic pathologist, Shiping Bao,  testified that the complainant had a total of approximately 38 stab wounds on her body.

(R.R. XXXVI-21). However, none of the injuries the complainant suffered caused her death. Bao specifically testified as reflected at R.R. XXXVI-26, to-wit:

> "Actually the conclusion was since there's no single fatal injury on the body, there's clotted blood, I would think Annie Toliver could have survived if there were emergency treatment during this period of time by removing the air and blood in the pleural cavities and blood transfusion."

He further testified that the complainant would have survived her injuries if she had received proper medical treatment, which, according to Bao, were standard medical procedures. (R.R. XXXVI-27-28). He specifically testified that the wounds were only potentially fatal because of a lack of medical treatment. (R.R. XXXVI-33).

The Court of Appeals erred in finding that the variance, if any, was immaterial. The allegations as to the manner and means of cause of death was a factual issue of which the State was required to give notice and against which petitioner was able to prepare a defense. The Court of Appeals stated that Toliver would not have required medical attention at

20

all if petitioner had not stabbed her, but that conclusion is superfluous. There are a number of conceivable factors that would have prevented Toliver from requiring medical attention, none of which constituted the cause of death. Clearly, there is a fatal variance between the *allegata* and the *probata*. The State alleged that petitioner caused the complainant's death by cutting and stabbing her. The evidence, however, clearly establishes the complainant died as a result of a lack of medical treatment. Contrary to the opinion of the Court of Appeals, this variance was extremely material. The proof of the complainant's death, the failure to seek medical care, was not alleged in the indictment. Therefore, the State has proven petitioner " . . . guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar, supra*. As the trial court charged the jury to convict petitioner if they believed beyond a reasonable doubt that petitioner caused her death by cutting and stabbing her, and as the State proved, *arguendo*, that petitioner caused the complainant's death by failing to seek medical care for her, a fatal variance exists. The Court of Appeals failed to appreciate the insufficiency of the evidence due to this fatal variance. The Court of Appeals therefore erred in failing to grant relief because of the fatal variance between the allegations and proof,

21

warranting a reversal by this Court of Criminal Appeals.

**GROUND FOR REVIEW NO. FOUR:**

The appellate court also erred in failing to grant relief on the basis that the trial court failed to instruct the jury regarding certain lesser included offenses. As noted herein above, Petitioner was indicted for the offense of capital murder. (R.R. XXXIV-19). The trial court provided a jury charge which included the charged offense, and the lesser included offenses of murder, felony murder, and manslaughter. (R.R. XXXVII-14-17). Petitioner objected that the charge also did not include a lesser included charge of aggravated kidnapping and kidnapping. (R.R. XXXVII-5).

The Court of Appeals correctly recognized that a defendant is entitled to a lesser included offense instruction if proof of the charged offense includes the proof required to establish the lesser included offense, and there is some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser included offense. *Ferrel v. State*, 55 S.W. 3d 586 (Tex. Crim. App. 2001). The appellate court must review all the evidence produced at trial in arriving at this determination. *Rousseau v. State*, 855 S.W. 2d 666 (Tex. Crim. App. 1993). If the evidence raises an issue of a lesser

22

included offense, a jury charge on that offense is mandatory, regardless of whether the evidence is from the State or the defendant, or whether it is strong, weak, unimpeached, or contradicted. *Bell v. State,* 693 S.W. 2d 434 (Tex. Crim. App. 1985).

First, as alleged in the case at bar, kidnapping is a lesser included offense of capital murder. The Court defined kidnapping for the jury in its charge. (R.R. XXXVII-13-14). Additionally, the Court charged the jury it could convict petitioner if it believed that he caused the death of the complainant by committing an act clearly dangerous to human life in the course of committing kidnapping. (R.R. XXXVI-16). Therefore, petitioner has met his burden under the first prong. *Ferrel, supra.*

Furthermore, it is obvious that evidence existed that Ppetitioner was not guilty of the charged offense as alleged, but, if at all, only of a lesser included offense. The evidence adduced at trial established, *arguendo,* that petitioner did not cause the death of complainant in the manner alleged by the State, but by another means.[2] The indictment alleged that petitioner caused the death of the complainant by cutting and stabbing her with a knife, while in the course of committing or attempting to commit kidnapping. The evidence, as discussed *infra,* shows that the

_____

2Petitioner does not concede that the State proved he caused the death of the complainant, but presents this theory by way of argument.

23

complainant died from a lack of proper medical care, a manner not alleged in the indictment. Therefore, it is clear that while petitioner was not guilty of the offense of capital murder as alleged, there was evidence that he was guilty of the offense of kidnapping only.

The Court of Appeals, in concluding that petitioner committed capital murder, substituted its judgment for what the jury could have determined. The Court of Appeals based its erroneous opinion on its conclusion that a rational juror or could have determined that the stab wounds were a cause of Toliver's death, consistent with the allegations in the indictment. Ignored by the Court of Appeals is the fact that a rational juror could likewise have determined that the lack of medical care was the cause of death as detailed by the State's expert witness, acquitted petitioner of capital murder, and found him guilty of kidnapping. The jury was denied the opportunity to make that factual determination, which issue apparently escaped the Court of Appeals. The Court of Appeals concluded that because the jurors had sufficient evidence to convict petitioner of capital murder, there was no evidence of a lesser included offense. That determination by the Court of Appeals ignores the salient portions of the record that challenged the cause of death. The trial court's jury charge requires the jury to find that petitioner caused the

complainant's death in order to convict him of either the charged offense, or any of the lesser included offenses included in the jury charge. Therefore, according to the charge, the jury must have found petitioner caused a homicide to convict him of anything. However, the jury charge does not allow the jury to convict petitioner of the offense that the State actually proved: kidnapping. The only difference between the charged offense of capital murder and the requested lesser included offense of kidnapping is the existence of a homicide. The jury could have found, based upon the evidence adduced by the State, that petitioner did not cause the death of the complainant in the manner alleged by the State, and is therefore not guilty of committing a homicide, but did, in fact, kidnap the complainant.

The trial court charged the jury on a plethora of lesser included offenses. (R.R. XXXVII-15-17). Therefore, the trial court acknowledged that some evidence of the charged offense of capital murder was absent. However, the trial court's charge of the lesser included offense of felony murder still requires the jury to find that petitioner committed the offense of kidnapping. Other charged lesser included offenses allowed the jury to convict petitioner of a homicide offense without requiring the jury to find petitioner also committed the offense of kidnapping. However, there was

evidence in the record that a rational juror or could have believed demonstrated that petitioner did not cause the death of the complainant in the manner alleged in the indictment. This is true, regardless of the opinion by the Court of Appeals regarding guilt. Therefore, because of the fatal variance between the *allegata* and the *probata* regarding the complainant's death, the jury could have rationally found that petitioner kidnapped the complainant, but did not cause her death in the manner alleged. The Court of Appeals even failed to address the fact that the trial court recognized the possibility of an acquittal of capital murder and instructed the jury regarding some lesser included offenses. Because the trial court already concluded that a genuine issue as to the lack of evidence proving beyond a reasonable doubt that petitioner committed the offense of capital murder, demonstrated by the court's lesser included instructions, it erred in not also providing an instruction on kidnapping over petitioner's objection. (R.R. XXXVII-5). The Court of Appeals erred in its analysis of this issue based on its opinion that appellant was guilty of capital murder. Just because a rational juror could have found petitioner guilty of capital murder does not necessarily mean that another rational juror could have acquitted petitioner of capital murder and found him guilty of kidnapping. Because of this failure of the Court of Appeals

26

to grant relief on this issue, this court should reverse the conviction.

**GROUND FOR REVIEW NO. FIVE:**

Regarding the introduction of prejudicial photographs, the Court of Appeals erred in its analysis of the issue. The Court of Appeals correctly recognized the standard of review as abuse of discretion standard. *Torres v. State,* 71 S.W. 3d 758 (Tex. Crim. App. 2002). The trial court's ruling is overturned when it falls outside the zone of reasonable disagreement. *Santellan v. State,* 939 S.W. 2d 155 (Tex. Crim. App. 1997). Rule 403, Tex. R. Evid., requires that photographs introduced into evidence to have some probative value that is not outweighed by their inflammatory nature. *Long v. State,* 823 S.W. 2d 259 (Tex. Crim. App. 1991). Factors the court uses in making this determination included the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or in color, whether the body is naked or clothed, the availability of other means of proof, and any circumstances unique to an individual case. *Long, supra.* Applying this to the case at bar leads to the inescapable conclusion that the trial court abused its discretion in admitting into evidence several autopsy photographs over Appellant's objection.

The State tendered State's Exhibits Number 148, 149 and 150.

27

Petitioner objected to their admission, observing that any possible probative value was outweighed by the effect of the unfair prejudice. (R.R. XXXV-188). The complained of photographs were large, full color closeups of the complainant's bloody face in two photographs, and of the complainant's entire bloody body in the third photograph. The State offered them into evidence purportedly to demonstrate the condition in which the complainant's body was found. However, the State introduced other photographs demonstrating the condition of the complainant's body to which petitioner did not object. The complained of photographs, therefore, were not needed in order for the State to establish the condition of the complainant's body. As such, they had no probative value.

The State additionally tendered eight photographs from the autopsy on the complainant as State's Exhibits Numbers 206, 207, 209, 210, 211, 212, 214, and 216, with the State's forensic pathologist, Shiping Bao, serving as the sponsor. (R.R. XXXVI-5, 14). Petitioner objected to their introduction, complaining that any probative value they might have was outweighed by their inflammatory nature. Rule 403, Tex. R. Evid. (R.R. XXXVI-6, 14). The trial court overruled petitioner's objection. (R.R. XXXVI-6, 14). The photographs were gruesome in nature, in that they were large, full color detailed closeups of numerous puncture wounds on

28

complainant's body.  The State's theory for their introduction was that they demonstrate the wounds inflicted by petitioner.  Unique to the cause *sub judice*, however, is the fact that these wounds did not cause the death of the complainant according to the State's own evidence.

According to the forensic pathologist's testimony, these wounds did not cause the death of the complainant. Bao testified that none of these wounds was fatal, nor did they cause the death of the complainant. (R.R. XXXVI-26). A lack of proper medical care caused the complainant's death, according to Bao. (R.R. XXXVI-27-28, 33). Therefore, these photographs had minimal probative value at best. As such, any putative probative value was grossly outweighed by the photographs' prejudicial effect. Bao testified that the gruesome wounds depicted in the photographs did not cause the death of the complainant. Therefore, their introduction only served to inflame the minds of the jury. The opinion of the Court of Appeals simply described the photographs with insufficient analysis of the prejudicial effects and lack of probative value. The Court of Appeals then simply summarily stated that there was no abuse of discretion in the admission of the photographs in contravention of the authorities cited by petitioner above. The Court of Appeals therefore erred in failing to properly address the factual complaints concerning the photographs and in summarily finding no abuse of discretion. The error of the Court of Appeals requires this court to reverse the conviction.

The reasons compelling review by this Court are therefore several. The decision of the Court of Appeals conflicts with decisions of other appellate courts, the same appellate court, and with applicable decisions of this Court and the

United States Supreme Court. The Court of Appeals has in effect decided important questions of State law which should be settled by this Court of Criminal Appeals. The decision of the Court of Appeals is therefore in conflict with the decisions cited above and additionally has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of this Court's power of supervision.

## PRAYER FOR RELIEF

For the reasons herein alleged, petitioner was denied a fair trial in Cause No. 10-04337-CRF-85 and Cause No. 10-13-00105-CR before the Court of Appeals. This Court should grant review in order to address and correct the errors of the Court of Appeals. Therefore, petitioner prays that this Court grant this petition, and upon reviewing the judgment entered below, reverse this cause and render a judgment of acquittal, or in the alternative, remand it to the trial court for a new trial.

Respectfully submitted,

_____ /S/ Gerald E. Bourque_____

GERALD E. BOURQUE
Appointed Counsel for Petitioner
Attorney at Law
24 Waterway Ave., Suite 660
The Woodlands, TX 77380
PHONE: (281) 379-6901
FAX: (832) 813-0321
TBL #02716500

## CERTIFICATE OF SERVICE

This is to certify that copies of the above entitled and numbered petition for discretionary review have been served on the State by providing a copy to the Office of the District Attorney, 300 East 26th Street, Suite 310, Bryan, Texas, 77803, by United States Mail, postage prepaid, and the State Prosecuting Attorney, P.O. Box 12405, Austin, TX 78711, by United States Mail, postage pre-paid, on the 12th day of May, 2015.

/S/ Gerald E. Bourque

GERALD E. BOURQUE
Attorney for Petitioner

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 9.4(i)(1), 9.4(i)(2)(A), and 9.4(i)(3), Tex. R. App. Proc, I

hereby certify that the word count of the program used to prepare this document is

4,139 words.

/S/ Gerald E. Bourque

GERALD E. BOURQUE

# APPENDIX A

No *Shepard's* Signal™
As of: May 7, 2015 11:25 AM EDT

# Robertson v. State

Court of Appeals of Texas, Tenth District, Waco

April 16, 2015, Opinion Delivered; April 16, 2015, Opinion Filed

No. 10-13-00105-CR

## Reporter

2015 Tex. App. LEXIS 3871

STANLEY WAYNE ROBERTSON, Appellant v. THE STATE OF TEXAS

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] From the 85th District Court, Brazos County, Texas. Trial Court No. 10-04337-CRF-85.

**Disposition:** Affirmed.

## Core Terms

kidnapping, photographs, stabbed, variance, wound, trial court, lesser-included, indictment, autopsy, murder, blood, depicted, parking lot, complains, argues, knife, aggravated kidnapping, capital murder, commit murder, gruesome, commission of the offense, probative value, stab wound, outweighed, overrule, Appeals, abducts, commit, pleads, fatal

## Case Summary

### Overview

HOLDINGS: [1]-The evidence was sufficient to support defendant's conviction of capital murder under Tex. Penal Code Ann. §§ 19.03(a)(2), 19.02(b)(1) (2011) where the victim's death did not occur for two to six hours after defendant first stabbed her and the jury could have reasonably inferred that defendant's actions of stabbing the victim through her seat belt could have shown restraint sufficient to establish kidnapping. The jury could have also inferred that defendant's actions of driving around for hours while the victim was still alive established that he intended to kidnap the victim prior to her death; [2]-There was not a fatal variance between the indictment and the evidence at trial where the court rejected defendant's contention that the victim died solely from a failure to seek medical attention.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Motions to Acquit & Dismiss

*HN1* A challenge to the trial court's denial of a motion for an instructed verdict or a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence.

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN2* In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence

in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Evidence > Admissibility > Circumstantial & Direct Evidence

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses

*HN3* The Court of Criminal Appeals of Texas has explained that an appellate court's review of "all of the evidence" includes evidence that was properly and improperly admitted. And if the record supports conflicting inferences, the appellate court must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. Further, direct and circumstantial evidence are treated equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties.

Criminal Law & Procedure > ... > Murder > Capital Murder > Elements

Criminal Law & Procedure > ... > Crimes Against Persons > Kidnapping > Elements

*HN4* A person commits the offense of capital murder if that person intentionally or knowingly causes the death of an individual and intentionally commits murder in the course of committing or attempting to commit kidnapping. Tex. Penal Code Ann. §§ 19.03(a)(2), 19.02(b)(1) (2011). A person commits the offense of kidnapping if that person intentionally or knowingly abducts another person. Section 20.03(a) (2011). The term "abduct" means to restrain a person with the intent to prevent liberation by either (1) secreting or holding the person in a place where the person is unlikely to be found, or (2) using or threatening to use deadly force. Tex. Penal Code Ann. § 20.01(2). To "restrain" means to restrict a person's movements without consent so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining that person. Section 20.01(1).

Criminal Law & Procedure > ... > Crimes Against Persons > Kidnapping > Elements

Criminal Law & Procedure > ... > Murder > Capital Murder > Elements

Criminal Law & Procedure > ... > Acts & Mental States > Mens Rea > Specific Intent

*HN5* Where the State charges a defendant with capital murder in the course of committing or attempting to commit kidnapping, the State has the burden of proving a restraint was made with a specific intent to prevent liberation, either by secreting or use or threat of deadly force. Additionally, the State has to prove the defendant developed the requisite intent for kidnapping at or before the time of the victim's death.

Criminal Law & Procedure > ... > Indictments > Amendments & Variances > Variances

*HN6* A "variance" occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial. A variance in pleading and proof can occur in two ways. First, a variance can involve the statutory language that defines the offense, such as when a statute

specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. For example, the retaliation statute makes it a crime to threaten a "witness" or "informant." The first type of variance occurs if the State pleads only "witness" in the charging instrument and proves only the unpled element of "informant" at trial. Second, a variance can involve a non-statutory allegation that is descriptive of the offense in some way, such as when the charging instrument pleads the offense was committed by stabbing with a knife, but the State proves at trial that bludgeoning with a baseball bat was the cause of death.

Criminal Law & Procedure > ... > Indictments > Amendments & Variances > Variances

Criminal Law & Procedure > ... > Homicide, Manslaughter & Murder > Murder > General Overview

*HN7* The methods of committing murder do describe an element of the offense: the element of causation. But murder is a result-of-conduct crime. What caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed. Variances such as this can never be material because such a variance can never show an "entirely different offense" than what was alleged. Immaterial non-statutory variances do not render the evidence legally insufficient.

Criminal Law & Procedure > Criminal Offenses > Lesser Included Offenses > Elements

*HN8* See Tex. Code. Crim. Proc. Ann. art. 37.09 (2006).

Criminal Law & Procedure > ... > Jury Instructions > Particular Instructions > Lesser Included Offenses

*HN9* To warrant a jury-charge instruction on a lesser-included offense, a defendant must demonstrate that (1) the elements of the lesser offense are contained within the proof necessary to establish the charged offense as pleaded in the State's indictment, and (2) the record contains some evidence by which a rational jury could conclude that if the accused is guilty, the accused is guilty of only the lesser offense and not the greater offense.

Criminal Law & Procedure > Criminal Offenses > Lesser Included Offenses > Crimes Against Persons

Criminal Law & Procedure > ... > Crimes Against Persons > Kidnapping > Elements

*HN10* The offense of aggravated kidnapping requires proof of an additional element that kidnapping does not. Compare Tex. Penal Code Ann. § 20.03(a) with Tex. Penal Code Ann. § 20.04(a), (b). Aggravated kidnapping requires proof of more than all the facts required to prove the offense as charged rather that "the same or less than all the facts," as contemplated by Tex. Code. Crim. Proc. Ann. art. 37.09(1) (2006).

Evidence > Relevance > Exclusion of Relevant Evidence > Confusion, Prejudice & Waste of Time

Evidence > Types of Evidence > Demonstrative Evidence > Photographs

*HN11* Under Tex. R. Evid. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. Rule 403 carries a presumption that relevant evidence will be more probative than prejudicial and favors the admission of relevant evidence. When the evidence is a photograph, if the photograph has elements that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the helpful aspects are substantially outweighed by the emotional and prejudicial aspects. Photographs depicting matters described by admissible testimony are generally admissible.

Evidence > Types of Evidence > Demonstrative Evidence > Photographs

Evidence > Relevance > Exclusion of Relevant Evidence > Confusion, Prejudice & Waste of Time

**HN12** An appellate court's analysis of the trial court's ruling pursuant to Tex. R. Evid. 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, relevant factors include the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case.

Evidence > Types of Evidence > Demonstrative Evidence > Photographs

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > Evidence

**HN13** An appellate court reviews the trial court's ruling on the admissibility of a photograph under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. In this determination, the appellate court must do more than decide whether the trial court conducted the required balancing analysis between probative and prejudicial values. The appellate court must also determine that the trial court's ruling is reasonable in view of all the relevant facts.

Evidence > Types of Evidence > Demonstrative Evidence > Photographs

Evidence > Relevance > Relevant Evidence

Evidence > Relevance > Exclusion of Relevant Evidence > Confusion, Prejudice & Waste of Time

**HN14** If a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. The probative value of a color photograph or a videotape depicting the recovery of a murder victim's body may outweigh its prejudicial effect even when the depiction includes close-ups and lingering camera angles, so long as the images simply reflect the gruesomeness of the offense. Similarly, the probative value of a series of autopsy photos of murder victims may outweigh its prejudicial effect when the series of photos is used to assist a medical examiner's testimony.

**Judges:** Before Chief Justice Gray, Justice Davis, and Justice Scoggins.

**Opinion by:** TOM GRAY

## Opinion

### MEMORANDUM OPINION

Stanley Robertson appeals from his conviction for the offense of capital murder. TEX. PEN. CODE ANN. § 19.03(a)(2) (West 2011). Robertson was convicted of intentionally committing the murder of Annie Toliver in the course of kidnapping or attempted kidnapping. Robertson complains that the evidence was insufficient for the jury to have found that he committed the murder in the course of kidnapping Toliver; the trial court erred by denying Robertson's request for a directed verdict; there was a fatal variance between the indictment and the proof at trial relating to the cause of Toliver's death; the trial court abused its discretion by denying Robertson's request for the lesser-included offense of kidnapping in the jury charge; and the trial court abused its discretion in the admission of crime scene and autopsy photos pursuant to rule of evidence 403. Because we find no reversible error, we affirm the judgment of the trial court.

## Sufficiency of the Evidence and Directed Verdict

In his first issue, Robertson complains that [*2] the evidence was insufficient for the jury to have found beyond a reasonable doubt that he committed the murder of Toliver while in the course of kidnapping or attempting to kidnap her. In his second issue, Robertson complains that the trial court erred by denying his motion for a directed verdict on the same basis. Because the standards of review are the same, we will address these issues together.

### Standard of Review

*HN1* A challenge to the trial court's denial of a motion for an instructed verdict or a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> *HN2* In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh [*3] the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

*HN3* The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

### Capital Murder

*HN4* A person commits the offense of capital murder if that person intentionally or knowingly causes the death of an individual and intentionally [*4] commits murder in the course of committing or attempting to commit kidnapping. *See* TEX. PENAL CODE ANN. §§ 19.03(a)(2), 19.02(b)(1) (West 2011). A person commits the offense of kidnapping if that person intentionally or knowingly abducts another person. *See id.* § 20.03(a) (West 2011). The term "abduct" means to restrain a person with the intent to prevent liberation by either (1) secreting or holding the person in a place where the person is unlikely to be found, or (2) using or threatening to use deadly force. *See id.* § 20.01(2). To "restrain" means to restrict a person's movements without consent so as to interfere substantially with the person's liberty, by moving

the person from one place to another or by confining that person. *See id.* § 20.01(1).

Robertson argues that the evidence was insufficient to establish that the murder of Toliver was committed in the course of kidnapping or attempted kidnapping. Robertson contends that because the murder occurred first, the kidnapping, if any, took place after Toliver was stabbed; therefore he could not have formed the intent to kidnap or attempt to kidnap Toliver before or prior to her murder. Robertson further argues that Toliver had accompanied him voluntarily to Walmart and that there was [*5] no evidence that Toliver's movements were ever restricted or restrained by Robertson prior to the stabbing.

*Facts*

In 2010, Robertson and Toliver's daughter, Tammy, were living together with Tammy's children. One day in early July of 2010, Tammy went to get her nails done. While she was gone, Robertson called her twice and told her to get her things out of the residence, but she did not think he was serious. Upon returning to the residence, Tammy discovered that Robertson was throwing her clothing out of the window. An argument ensued and Tammy went to a neighbor's house and called the police. The police took Robertson and dropped him off at another location in Bryan.

Robertson returned to the residence, and entered by kicking out a window. He had a hammer and tried to hit Tammy with it but the head of the hammer came off the handle. Robertson grabbed a knife and Tammy dove out the window. Robertson caught up to Tammy, held the knife to her throat, and threatened to cut or stab her if she moved or did anything. Robertson and Tammy went into the residence where her children were crying. Tammy's son got a knife but dropped it when Robertson threatened to stab Tammy. Tammy's children called [*6] the police who came and arrested Robertson.

After Robertson's arrest, Tammy and her children ultimately moved in with Tammy's sister in Giddings. Tammy did not tell Robertson where they were even though he had been calling her and her friends on a regular basis since his arrest. Robertson was released on bond after two weeks in jail. On August 13, 2010, approximately a month after his arrest, Robertson called Toliver and told her he had some money for clothing for Tammy's children because school was starting soon. Toliver agreed to allow Robertson to pick up her and her son, Curtis, and to take them to Walmart shopping. Less than an hour before picking them up, Robertson purchased a knife at a Walmart in Bryan.

When they arrived at the Walmart in College Station, Toliver was on her cell phone and did not get out of the vehicle. Robertson and Curtis entered the store. Shortly after going in, Curtis went to the restroom and he and Robertson split up. Surveillance video recovered from Walmart showed that Robertson immediately left the store and went to the parking lot to his vehicle. The video further shows Robertson going to the passenger side of the vehicle. Approximately two minutes [*7] later, Robertson walked around the vehicle, got in, and quickly left the parking lot.

Toliver's friend Helen had been on the phone with Toliver, who testified that during that conversation she "heard something go, Unh" and was disconnected. Helen attempted to call Toliver again but was unsuccessful. Helen called Curtis to check on Toliver. After he left the restroom, Curtis was unable to locate Robertson so after speaking with Helen, he went outside to find the vehicle but it was gone. Law enforcement would later find drops of blood next to where the passenger door of the vehicle Robertson was driving was parked, which DNA testing established to be Toliver's blood.

Robertson called Helen using Toliver's cell phone and told her that Toliver was dead. Robertson then called Tammy from Toliver's cell phone and told

her that he had kidnapped Toliver. When Robertson called Tammy, Tammy put it on the speaker. Tammy was at her sister-in-law Alisha's house with her children at this time. Robertson told Tammy that he had Toliver and that she was going to die that day. He said he had a gun and said he was going to shoot Toliver.

Robertson allowed Tammy to speak to Toliver. Toliver's voice was described [*8] as "gurgly" and she was having difficulty breathing and could not speak more than two or three words at a time. Toliver told Tammy, "I'm hurt. He stabbed me. I'm all cut up." Robertson took the phone from Toliver and told Tammy that he would kill Toliver if Tammy did not meet him or if the police were called. Robertson then told Tammy that he had taken Toliver because Tammy did not visit him in jail or pick him up when he was released. He wanted to hurt Tammy as much as he was hurt. He told Tammy that she would be going to a funeral in the next week or two and that he had stabbed Toliver sixteen times. Tammy, Alisha, and Tammy's brother and Alicia's husband Richard agreed to meet Robertson in Bryan, but Robertson did not show up.

During this time, Alisha had contacted law enforcement on a separate cell phone. A hostage negotiator named Harkrider became involved and began attempting to contact Robertson. Robertson and Harkrider spoke several times over the next several hours, during which time Robertson indicated that Toliver had not been injured other than him hitting her in the parking lot at the Walmart and that he would return her to Bryan and release her. Robertson did tell Harkrider [*9] that he was armed and intended to get into a shootout with law enforcement. Harkrider did not know until later that Toliver had been stabbed. Harkrider believed from his conversations with Robertson that he had restrained Toliver and that she was not free to leave.

During this time, Robertson had in fact driven to Fort Worth, where his vehicle was spotted by a patrol unit. Two patrol cars activated their lights but Robertson did not stop. Robertson was able to drive around a spike strip, then suddenly stopped and turned around. Robertson then began driving the wrong way into oncoming traffic and crashed head-on into a patrol car, causing his vehicle to flip. The vehicle had a lot of blood in it and a bloody knife was found on the road near Robertson's vehicle; however, Toliver was not in the vehicle. The seat belt on the passenger side of the vehicle was bloody and had cut marks consistent with someone trying to stab a person with the seat belt on. DNA testing would later establish that the blood in the vehicle and on the knife blade was that of Toliver. The DNA found on the handle of the knife was from a mixture of Toliver and Robertson. Robertson's clothing was also taken and Toliver's [*10] blood was found on his jeans.

A helicopter had been sent to search for a homicide victim, and Toliver's body was soon found behind a business in Fort Worth. Toliver's body was found face-up lying in a parking lot and was covered in blood.

An autopsy was performed on Toliver which showed that Toliver had sustained thirty-one stab wounds and seven incised wounds on her face, neck, chest, back, arms, and hands.[1] None of the injuries were in and of themselves immediately fatal, but two stab wounds had entered Toliver's pleural cavities on both the right and left side and had caused her lungs to collapse. The doctor who performed the autopsy stated that:

> Actually, the conclusion was since there's no fatal injury on the body, there's clotted

---

[1] The difference between a stab wound and an incised wound was described by the physician who performed the autopsy as follows: "[t]he stab wound is the wound—the depth of the wound is greater than the length of the wound; the incised wound, also called a cut, is the wound in which the length of the wound is greater than the depth of the wound."

blood, I would think Annie Toliver could have survived if there were emergency treatment during this period of time by removing the air and blood in the pleural cavities and blood transfusion.

In this case the mechanism—the mechanism of the death is the combination of the hemorrhage, the collapse of the lungs, the fear, the pain, and the suffering during this period of—during the period of two to six hours which is consistent with the timeline provided to [*11] me by the police department.

The cause of death in this case is multiple stab wounds, the manner of the death is homicide.

HN5 Because the State charged Robertson with capital murder in the course of committing or attempting to commit kidnapping, the State had the burden of proving a restraint was made with a specific intent to prevent liberation, either by secreting or use or threat of deadly force. *Brimage v. State*, 918 S.W.2d 466, 475-76 (Tex. Crim. App. 1996). Additionally, the State had to prove Robertson developed the requisite intent for kidnapping at or before the time of the victim's death. *Santellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997).

Robertson argues that the evidence showed that Toliver was stabbed before Robertson left the Walmart parking lot and there was no evidence that Toliver's movement was restricted without her consent prior to her being stabbed. Robertson contends that the evidence must establish that the kidnapping preceded the homicide, [*12] and that is not supported by the evidence because the murder began at the time Toliver was first stabbed.

In support of his argument, Robertson cites to *Herrin v. State*, 125 S.W.3d 436 (Tex. Crim. App. 2002). In *Herrin v. State*, the defendant got into an altercation with the victim and shot him. After the victim was dead, Herrin moved the body and hid it in the woods where it was later discovered. The Court of Criminal Appeals determined that the evidence was insufficient for the jury to have found that the murder was committed in the course of kidnapping or attempted kidnapping because there was no evidence that Herrin intended to kidnap the victim at or before the time he committed the murder. *See Herrin*, 125 S.W.3d at 440-41 ("Appellant did not shoot to merely disable or harm [the victim] so that he could then abduct him, but shot him at close range in the vital organs in an obvious effort to kill him.").

In *Santellan v. State*, the defendant shot the victim in a parking lot. *See Santellan v. State*, 939 S.W.2d 155. One shot was to her head, which testimony showed would have caused immediate brain death but it was possible that the victim could have still been alive for three to five minutes after that time. The defendant picked the victim up after he shot her, put her in his vehicle, and drove with [*13] her to a hotel. The Court of Criminal Appeals found that the defendant's actions taken while the victim could possibly have still been alive were sufficient for a reasonable juror to have found that the defendant developed the intent to kidnap the victim before or at the time of her death. *Santellan*, 939 S.W.2d at 164.

In this case, Toliver's death did not occur for approximately two to six hours after Robertson first stabbed her. The jury could reasonably have inferred that Robertson's actions in stabbing Toliver through her seat belt could have shown restraint sufficient to establish kidnapping while he was stabbing Toliver. The jury also could have inferred that Robertson's actions in driving around for hours while Toliver was still alive and could potentially have been saved while attempting to get Tammy to meet him also reasonably served to establish that Robertson intended to kidnap Toliver prior to Toliver's death. We find that the evidence was sufficient for any reasonable juror to have found that Robertson kidnapped Toliver before or at the time of her death. *See Santellan*, 939

S.W.2d at 164. Further, the trial court did not err by denying Robertson's motion for a directed verdict on this same basis. We overrule issues one and two. [*14]

### Fatal Variance

In his third issue, Robertson complains that there was a fatal variance between the indictment and the evidence at trial. Robertson argues that because the indictment alleged that he committed the murder of Toliver by stabbing, but the evidence at trial showed that Robertson did not cause the death of Toliver in the manner alleged, but rather by his failure to seek medical attention.

*HN6* "A 'variance' occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). A variance in pleading and proof can occur in two ways. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). First, a variance can involve the statutory language that defines the offense, such as when a statute specifies alternate methods by which an offense could be committed, the charging instrument pleads one of those alternate methods, but the State proves, instead, an unpled method. *Id.* "For example, the retaliation statute makes it a crime to threaten a 'witness' or 'informant.'" *Id.* "The first type of variance occurs if the State pleads only 'witness' in the charging instrument and proves only the unpled element of 'informant' at trial." *Id.* Second, a variance can involve a non-statutory allegation that is [*15] descriptive of the offense in some way, such as when the charging instrument pleads the offense was committed by stabbing with a knife, but the State proves at trial that bludgeoning with a baseball bat was the cause of death. *Id.* The variance alleged by Robertson is of the second type.

As alleged against Robertson, the elements of capital murder are that he intentionally caused the death of Toliver in the course of committing or attempting to commit kidnapping. Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03 (West 2011). The manner in which Robertson caused Toliver's death, or the means used, are not statutory elements of the offense, and do not affect the allowable unit of prosecution. *Johnson*, 364 S.W.3d at 296-97.

In *Johnson*, using the example of alleging death by stabbing versus the proof at trial of bludgeoning with a baseball bat as the cause of death, the Court of Criminal Appeals noted, *HN7* "These methods of committing murder do describe an element of the offense: the element of causation. But murder is a result-of-conduct crime. What caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed. Variances such as this can never be material because such a variance [*16] can never show an 'entirely different offense' than what was alleged." *Id.* at 298 (citations omitted). Immaterial non-statutory variances do not render the evidence legally insufficient. *Id.* at 299.

We disagree with Robertson's contention that Toliver died solely from a failure to seek medical attention. Toliver would not have required medical attention at all if Robertson had not stabbed her more than thirty times. However, even if the failure to seek medical attention was part of the cause of Toliver's death, we find that the variance, if any, is immaterial, and the evidence was not insufficient on this basis. We overrule issue three.

### Jury Charge Error

In his fourth issue, Robertson complains that the trial court erred by overruling his objections to the jury charge. Robertson argues that he was entitled to an instruction on the lesser-included offenses of aggravated kidnapping and kidnapping. The charge presented to the jury did contain the lesser-included offenses of murder, felony murder, and manslaughter.

*HN8* An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from [*17] the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the charged offense only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE. CRIM. PROC. ANN. art. 37.09 (West 2006).

*HN9* To warrant a jury-charge instruction on a lesser-included offense, a defendant must demonstrate that (1) the elements of the lesser offense are contained within the proof necessary to establish the charged offense as pleaded in the State's indictment, and (2) the record contains some evidence by which a rational jury could conclude that if the accused is guilty, the accused is guilty of only the lesser offense and not the greater offense. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007) (applying "pleadings approach" as sole test for first step in determining whether a party is entitled to a lesser-offense instruction).

As reflected in the indictment, Robertson was charged with intentionally causing Toliver's death while in the course of committing or attempting to commit the kidnapping of Toliver. [*18] *See* TEX. PENAL CODE ANN. § 19.03(a)(2). Kidnapping is a lesser-included offense of the capital murder charge as alleged against Robertson. *See id.; see also Rodriguez v. State*, 146 S.W.3d 674, 677 (Tex. Crim. App. 2004). However, *HN10* the offense of aggravated kidnapping, for which

Robertson requested a jury instruction as a lesser-included offense, requires proof of an additional element that kidnapping does not. *Compare* TEX. PENAL CODE ANN. § 20.03(a) (a person commits the offense of kidnapping if that person "intentionally or knowingly abducts another person"), *with* TEX. PENAL CODE ANN. § 20.04(a), (b) (a person commits the offense of aggravated kidnapping if the person "intentionally or knowingly abducts another person with the intent" to commit a host of other actions or "intentionally or knowingly abducts another person and uses or exhibits a deadly weapon in the commission of the offense"); *see Mohammed v. State*, 127 S.W.3d 163, 168 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Aggravated kidnapping requires proof of more than all the facts required to prove the offense as charged rather that "the same or less than all the facts," as contemplated by article 37.09(1). *See Mohammed*, 127 S.W.3d at 168. There are elements of aggravated kidnapping which are not contained within the proof necessary to establish the charged offense as pleaded in the State's indictment. *See Hall*, 225 S.W.3d at 535; *see also Mohammed*, 127 S.W.3d at 168. Therefore, aggravated kidnapping [*19] could not properly be included as a lesser-included offense in this proceeding. *See id.* The trial court did not err in overruling Robertson's objection to not include an instruction on aggravated kidnapping.

As to the lesser-included offense of kidnapping, Robertson argues that because the cause of death was the failure to seek medical attention and not stabbing, he was not guilty of the offense of capital murder as alleged in the indictment. Further, Robertson argues that because of this variance, the jury could not have found him guilty of the death of Toliver at all, and that the jury charge did not allow the jury to find him guilty of kidnapping, the only offense that he contends that the State actually proved. Robertson argues that it was possible that the jury could have found that he was guilty of only the lesser offense of kidnapping.

As set forth in issue three above, we disagree with Robertson's assertion that there was a fatal variance between the indictment and the proof at trial relating to the cause of Toliver's death. Clearly, a rational juror could have determined that the thirty-one stab wounds and seven incised wounds that Robertson undisputedly inflicted on Toliver [*20] were a cause of Toliver's death, which was consistent with the allegations in the indictment. Because of this, we find that the record does not contain "some evidence by which a rational jury could conclude that if the accused is guilty, the accused is guilty of only the lesser offense and not the greater offense" as Robertson has argued. Therefore, Robertson was not entitled to the inclusion of the lesser-included offense of kidnapping and the trial court did not err by refusing his requested instruction. We overrule issue four.

## Admission of Evidence

Robertson complains that the trial court abused its discretion in the admission of three photographs of Tolbert's body taken at the scene where her body was located and eight photographs taken during the autopsy because the probative value of the photographs was greatly outweighed by unfair prejudice. Tex. R. Evid. 403.

## Standard of Review

*HN11* Under rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. Tex. R. Evid. 403. Rule 403 carries a presumption that relevant [*21] evidence will be more probative than prejudicial and favors the admission of relevant evidence. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). When the evidence is a photograph, if the photograph has elements that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if

the helpful aspects are substantially outweighed by the emotional and prejudicial aspects. *Erazo v. State*, 144 S.W.3d 487, 491-92 (Tex. Crim. App. 2004). Photographs depicting matters described by admissible testimony are generally admissible. *Erazo*, 144 S.W.3d at 489.

*HN12* Our analysis of the trial court's ruling pursuant to rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, relevant factors include "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual [*22] case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

*HN13* We review the trial court's ruling on the admissibility of a photograph under an abuse of discretion standard and will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). In this determination, we must do more than decide whether the trial court conducted the required balancing analysis between probative and prejudicial values. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). We must also determine that the trial court's ruling is reasonable in view of all the relevant facts. *Id.*

*HN14* "If a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or

might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury." *Erazo*, 144 S.W.3d at 489. The probative value of a color photograph or a videotape depicting the recovery of a murder victim's body may outweigh its prejudicial effect even when the depiction includes close-ups and lingering camera angles, so long as the images simply reflect the gruesomeness of the offense. *See Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001). Similarly, the probative value of a series of autopsy photos of murder victims may outweigh its prejudicial effect when the series of photos is used to assist a [*23] medical examiner's testimony. *Newbury v. State*, 135 S.W.3d 22, 43 (Tex. Crim. App. 2004).

### Crime Scene Photos

Robertson complains of three photographs that were introduced in a group of twenty photographs that depicted the location where Toliver's body was located and showed Toliver's body lying in a parking lot. Two of the objected-to photographs were close-up photographs of Toliver's face and the third was a photograph of her entire body as it was found. Toliver had been found lying face-up in the parking lot with her arms outstretched.

The photographs were in color and were somewhat gruesome in that two of them depicted the wounds to Toliver's face and had dried blood visible on them. The third was a view of Toliver's entire body which was clothed. The third photograph showed that Toliver's shirt was bloody and had holes in it where Robertson had stabbed her. The photographs had probative value to the State in that they depicted the condition of Toliver when she was found. There was little time spent on those photographs specifically, and the gruesomeness of the photographs is attributable to the subject matter it depicts, but are no more gruesome than would be expected in this sort of crime. *See Gallo*, 239 S.W.3d at 763.

### Autopsy Photos

Robertson further complains [*24] of eight photographs taken during the autopsy of Toliver that depicted the wounds inflicted by Robertson. Except for one photograph, the photographs were taken after Toliver's body had been cleaned and are not bloody or especially gruesome, but do show the wounds inflicted on Toliver. The other photograph was taken before Toliver's body was cleaned and was a close-up of Toliver's hand showing what the examiner described as defensive wounds. These photographs were used during the testimony of the autopsy examiner to explain the wounds that were found on Toliver's body and what effect they had in his determination of the cause of her death. *See Newbury v. State*, 135 S.W.3d at 43. There was no mutilation of the body caused by the autopsy portrayed in the photographs.

Considering the relevant factors set forth in determining whether the trial court abused its discretion in admitting the photographs, we find that there was no abuse of discretion in the admission of the photographs. We overrule issue five.

### Conclusion

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Affirmed

Opinion delivered and filed April 16, 2015

Do [*25] not publish